[No. 1498.]

LYON COUNTY, RESPONDENT, *v.* DELIA ROSS, APPELLANT.

COUNTY COMMISSIONERS—MODE OF EXERCISING POWERS. Boards of county commissioners, being of statutory and limited jurisdiction, cannot act, except where authority is given by express provision of the statute, and when they act under such authority they must strictly follow all the conditions under which the authority is given.

IDEM—SALE OF COUNTY PROPERTY—TITLE ACQUIRED FROM DELINQUENT TAX SALE. The sale of property acquired by the county under the provisions of sec. 40 of the general revenue act (Stats. 1891, p. 148), the assessed value whereof is one hundred dollars or more, can be made only by the board of county commissioners at public auction and after thirty days previous published notice, as provided for in the tenth clause of sec. 1949, Gen. Stats. of Nevada.

TAX SALE—TITLE OF COUNTY, WHEN BECOMES ABSOLUTE. The title to property bid in by the treasurer for the benefit of the county and state at a tax sale of property for delinquent taxes, under the provisions of sec. 40 of the general revenue act (Stats. 1891, p. 148), upon the expiration of the right of redemption, vests absolutely in the county.

SALES OF COUNTY PROPERTY—OBJECT OF RESTRICTIVE PROVISIONS OF STATUTE. The restrictive provisions of the statute, requiring sales of property belonging to the county by the commissioners to be at public auction with previous notice, were inserted for the protection and benefit of the general public and were intended to guard against favoritism, fraud and corruption in the sale of public property.

APPEAL from the District Court of the State of Nevada, Lyon county; *A. E. Cheney,* District Judge, presiding:

Action by Lyon county against Delia Ross, to have canceled a deed to property executed to her by the treasurer of Lyon county. From a judgment in favor of plaintiff and an order denying a motion for new trial, defendant appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Alfred Chartz,* for Appellant:

I. Sec. 1949 of Gen. Stats. does not apply to land acquired at delinquent tax sales, and such property is not regarded as other property of the county. (Black on Tax Title, secs. 299, 301; Blackwell on Tax Titles, sec. 610; *Morrill* v. *Douglass,* 14 Kan. 293; *Steiner* v. *Coxe,* 4 Barr. 15.)

II.   Sec. 12, Powers of Commissioners, Laws of 1861 of Nevada, provided that the real estate of the county could be sold by an agent, who should have the same powers as commissioners appointed to sell real estate by the district court.   Property then sold under execution in 1861 was the same as now, and if an officer sold without advertising, it did not void the sale, but subjected the officer selling to a proper penalty upon his bond.

III.   Sec. 37, Revenue Law of 1865, page 289, provides that no advertisement in any newspaper of any notice of ·sale of any property under this act shall be deemed necessary, thus recognizing a material difference in character of property acquired at delinquent tax sales, and thus recognizing that if property of the county was sold by .any agent without advertising that the deed should nevertheless be good, and that the remedy was against the agent.

· IV.   The county is estopped by every principle or public policy, and in equity, from denying its deed.   (Beach on Corporations, sec. 225; *Moore* v. *New York,* 73 N. Y. 238; 8 Wheat. 338; Thompson on Corporations, secs. 5978, 6015; *Jenks* v. *Wright,* 61 Pa. 413; Bigelow on Estoppel, 461–466; 41 Barb. 142.)

V.   It will be observed that the proceeding in 41 Barb. 142, *supra,* was one in *invitum.*   It was a proceeding to deprive a citizen of his property for non-payment of taxes, wherein the law is well known and well settled that every step requisite, and every condition precedent to such sale, must be followed.   Yet it is contended in the case at bar that because Armory Hall lot was not advertised there was no sale.   Advertising is claimed to be a condition precedent to the right to sell such land in Lyon county, and in New York it does not render all other proceedings nugatory, and make void a title, although the proceeding in that case is against the citizen.   If the decisions in Lyon county and New York were reversed, it would not be so surprising, because there is better reason to follow the modes prescribed strictly to deprive a citizen of his property than there is in selling him property at an open meeting of a board of commissioners.   (See, also, 55 Mich. 181; 65 Ill. 458; Green's Brices Ultra Vires, p. 608, pp. 41, 42, 60; *Mayer* v. *Ray,* 19

Wall, 468; Am. & Eng. Ency. of Law, title Estoppel, p. 29; Am. & Eng. Ency. of Law, 25, p. 714; 4 Kan. 415; 33 Pac. Rep. 1051; 54 Fed. 807; 21 Atl. 976; *Blood* v. *Light*, 38 Cal. 649; *Smith* v. *Randall*, 6 Cal. 47; *Commonwealth* v. *Billou*, 3 Pick. 224.)

VI. Courts of judicature will not set a deed aside without cause, or for any slight cause. This is well settled law, and needs no citation of authority. Respondent's case rests upon the assumption that property derived from delinquent tax sales is to be dealt with in the same manner as the property of the county, and he stands upon the incongruous statute of 1893, which is an act supplementary to the act of 1891, and is part and parcel thereof, and must be read in conjunction therewith. The act of 1893 contains no negative words to intimate and authorize a court to set aside a deed under a sale without notice, and there is no principle of public policy which dictates that its provisions for notice before sale should be construed as mandatory. The equities of the case are all in favor of the defendant. All the wrongs were perpetrated by the plaintiff. The real *cestui que trust*—the people of Lyon county—are protected by section 60 of the statute of 1891. The policy of the law is to make secure deeds of property sold at tax, judicial and official sales. The county has received all it is entitled to.

*F. M. Huffaker*, for Respondent:

I. It is settled law in this state that "boards of county commissioners are inferior tribunals of special and limited jurisdiction, and their action must affirmatively appear to be in conformity with some provision of law giving them power, or it will be without authority." (*State* v. *C. P. R. R. Co.*, 9 Nev. 89, and cases cited.)

II. "It is well settled that a board of county commissioners is a body possessing but limited and special powers; that when its power or authority to do any particular thing is questioned, the record must show affirmatively all the facts necessary to give it authority to perform the act complained of; and that when this is not the case, the presumption is against its jurisdiction." (*Godchaux* v. *Carpenter*, 19 Nev. 418, and cases cited.)

III.   The inquiry here being as to the power of the commissioners and treasurer of Lyon county to dispose of county property, it follows, as a necessary postulate, that property of a county can be disposed of only as the statute directs; that neither commissioners nor treasurer, in this regard, can act outside of the statute and bind the county.   Subdivision first of section 1949, Gen. Stats., and subdivision tenth of the same section, limit the authority of commissioners over county property as follows:   First—" To make orders respecting the property of the county, in conformity with any law of this state, etc."   Tenth—" To sell at public auction, at the court house of said county, after at least thirty days previous public notice, etc."

IV.   Counsel for defendant admits, as the record shows, that the treasurer of Lyon county, on the 3d day of September, 1894, was in possession of a deed to this property of an assessed value of more than one hundred dollars, and that all the proceedings leading up to this deed to the treasurer were regular, and that no notice of the sale was posted or published by any one, or directed to be.   In fact the record shows that none could have been, as the board attempted to make the order on the 3d of September, 1894, and the treasurer attempted to convey it to the appellant on the 4th day of September, 1894, so that no law was complied with by these officers of Lyon county in disposing of this property; consequently the appellant, Delia Ross, by her purchase, acquired no right to the property in controversy.

V.   When county officers undertake to exercise powers, the mode or manner of their procedure must be as prescribed by law.   If they attempt to exercise any power otherwise than as prescribed by law, their action is absolutely void. (*Sadler* v. *Eureka Co.*, 15 Nev. 42; *State* v. *Washoe Co.*, 6 Nev. 104.)

VI.   The mode of procedure in selling county property is prescribed to be at public auction, after notice given by publication for thirty days, if over an assessed valuation of one hundred dollars; if less, may be sold by the treasurer, upon an order therefor by the county commissioners, after posting notice for twenty days.   No such order was made.   The order of July 3, 1894, is not for the treasurer to *sell*, but to

convey by deed. An order without any authority of law, consequently the treasurer had no authority to execute the deed of September 4, 1894, under which appellant claims; therefore, the trial court is correct in finding that this property was never sold to the appellant; therefore the deed in her possession is ineffectual to pass the title of Lyon county.

VII. This procedure of the board of county commissioners and treasurer of Lyon county, being without authority of law, does not bind Lyon county. As said in Jones, vol. 1, The Law of Evidence, sec. 257: " While individuals are liable to the extent of the power they have apparently given to their agents, the government or municipalities are liable only to the extent of the power *actually conferred;* and all persons must take notice of the extent of the authority of those acting in an official capacity." And as supporting the text the following authorities are cited: *The Floyd Acceptance,* 7 Wall. 666; *Clark* v. *Des Moines,* 19 Iowa, 199; *Pierce* v. *United States,* 1 Ct. of Cl. 270; *Grant* v. *United States,* 5 Ct. of Cl. 71; *State* v. *Hayes,* 52 Mo. 578; *Mayor* v. *Reynolds,* 26 Md. 1; *Delafield* v. *State,* 26 Wend. 238; Beach Pub. Corp. sec. 242; Dill. Mun. Corp. sec. 447; *Inskeep* v. *Lecony,* 1 N. J. L. 112; *United States* v. *Grosmayer,* 9 Wall. 75; *Anderson* v. *Roberts,* 18 Johns. 528; *Crocker* v. *Belanger,* 6 Wis. 668.

VIII. In whatever form the question has arisen, the unvarying decision of the courts has been that county officials must not only exercise a power expressly given by statute, but, also, that such exercise must be in the manner expressed in the statute. That where, as by our statute, they are required, in selling county property, to notice such sale and sell at public auction, at the court house, these are conditions precedent to a valid sale, and that any conveyance of county property, without every one of these conditions having been strictly complied with, is void, *ab initio,* vesting no title in the grantee; in which case the county can call upon the court, in the exercise of its equity jurisdiction, to decree a cancelation of such a conveyance.

IX. The publishing or posting of a notice of sale of county property, according to its assessed value, the sale to be at public auction, and at the county court house, being conditions

precedent, must be in each particular complied with, or there is no sale, as the trial court finds. (*V. & T. R. R. Co.* v. *Lyon Co.*, 6 Nev. 68; *Soderberg* v. *Crockett*, 17 Nev. 409; *People* v. *San Francisco*, 21 Cal. 668; *San Diego Water Co.* v. *City of San Diego*, 59 Cal. 517; *Hawkins* v. *Carroll Co.*, 50 Miss. 735.)

X.   These requirements of our statute, that the sale should be upon notice, at public auction at the court house, are mandatory upon the county officers. (*Winn* v. *Shaw*, 87 Cal. 631; *Maxwell* v. *Board of Stanislaus Co.*, 53 Cal. 389; *People* v. *Super. San Francisco*, 36 Cal. 595.)   And the county is the proper party, plaintiff, to have this deed decreed void. (*People* v. *Meyers*, 15 Cal. 33.)

XI.   Under what law of this state, or by what principle, does counsel claim that it makes any difference, as to the law governing the disposition of county property, how the county acquires the title?   The language of our statute is: "To sell at public auction, at the court house of said county, after at least thirty days' notice, * * * and cause to be conveyed *any* property belonging to the county, etc." (Gen. Stats. sec. 1949, subdiv. 10.)   This is a limitation attached to the power of the board to dispose of county property, without reference to the source of the title, which is in perfect harmony with the provisions of section 55 of the revenue act of 1891, and modified by the supplementary act of 1893, to the extent, only, of authorizing the board to direct the treasurer to sell property of a less assessed valuation than one hundred dollars.   Without which, all county property would have to be sold, as provided in the general grant of power, which, having a limitation as to the mode of procedure coupled with the power, is of the substance of the grant and jurisdictional.

XII.   The power to sell does not attach to a trust, without authority expressed in the instrument creating the trust. And whatever the power, all the conditions attached thereto, by its creation, must be complied with strictly, "however unimportant they may seem." (*Pettis Co.* v. *Gibson*, 73 Mo. 502; *Bakewell* v. *Ogden*, 2 Bush (Ky.) 365; *Hall* v. *Lownie*, 45 Ill. 493; *Little* v. *Bennett*, 5 Johns. Eq. (N. C.) 156; *Yankee* v. *Thompson*, 51 Mo. 234; *Rice* v. *Tavernier*, 8 Minn.

248; *Jaques* v. *Todd,* 3 Wend. 83; *Richardson* v. *Crooker,* 7 Gray (Mass.) 190; *Hancock* v. *Whyback,* 66 Mo. 672.)

By the Court, MASSEY, J.:

The respondent instituted this action, in the district court of Lyon county, to have canceled a deed to certain property described in the complaint, executed by the treasurer of Lyon county to the appellant. From a judgment in favor of the respondent and an order denying appellant's motion for a new trial, this appeal has been taken.

The undisputed and material facts appearing in the record are that on and prior to the 3d day of September, 1894, the respondent was the owner and in the possession of the said property, situate in Lyon county; that said property was regularly sold for taxes for the year of 1893, at delinquent tax sale in January, 1894; that the same was regularly bid in for Lyon county; that said property was not redeemed from said sale and the proper conveyance therefor was made to the treasurer of said county as provided for by the revenue laws; that the assessed value of said property for the year 1893 was $1500; that on the 3d day of September, 1894, the board of county commissioners of Lyon county, by an order entered of record, directed the treasurer of said county to convey said property by deed to the appellant for the sum of the delinquent taxes and costs; that on the 4th day of September, 1894, the said treasurer, under and by virtue of said order, and in consideration of the sum of $42 72, the same being the amount of delinquent taxes and costs, made, executed and delivered to the appellant the deed mentioned in the complaint for the said property; that the said last named sale was not made at public auction, nor was any notice given of such or any sale thereof, and that the appellant has since paid to the respondent all taxes levied against said property.

Upon these facts, the district court held that the deed of the treasurer to the appellant was executed and delivered without authority of law, the same did not divest the respondent of its title to said property, did not convey to the appellant any right, title or interest therein and was void. Was the sale and conveyance, under the facts stated,

authorized by law? This is the only question to be determined.

The act to create a board of county commissioners in the several counties of this state, and to define their duties and powers, provides that such "board of county commissioners shall have power and jurisdiction in their respective counties: * * * *Tenth*—To sell at public auction at the court house of said county, after at least thirty days previous notice (in the same manner as required by law for the sale of like property on execution), and cause to be conveyed any property belonging to the county, appropriating the proceeds of such sale to the use of the same." * * * (Gen. Stats. Nev. sec. 1949.)

Section 40 of the act to provide revenue for the support of the state government, approved March 23, 1891, provides, in effect, that at the sale of property for delinquent taxes, if no one else shall bid upon any piece of land, the treasurer shall bid the same in for the benefit of the county and state, and file a certificate thereof with the county recorder; and the same shall be subject to redemption from such treasurer the same as from a private purchaser; and if not redeemed, the title thereto shall vest in the county for the benefit of the county and state, and may be disposed of as provided by law. (Stats. of Nev. 1891, p. 148.)

Section 55 of the same act requires the treasurers of the several counties of this state to attend all sales of property for delinquent taxes, and in case there shall be no bidders for any parcel of property offered for sale, then such treasurers may bid for and buy in such property; and such treasurers shall take such certificates of sale or deeds for such property, and such treasurers, and their successors in office, shall hold such property in trust for the use and benefit of the state and counties and any officers having fees due them, subject to redemption as provided by law. In case such property is not redeemed, the officer who made the sale is required to execute the proper deed for such property to the treasurers, in trust as aforesaid, and such treasurers are required to hold such property until sold, when upon an order entered upon a record of the proceedings of the board of county commissioners, such treasurers, or their successors in office, for

the consideration mentioned in such order, shall make and deliver, upon the payment of such consideration, an absolute deed to the purchaser of said property, discharged of any trust. (Stats. of Nev. 1891, pp. 155, 156.)

An act supplementary to the last named act, approved March 6, 1893, provides: "Whenever the time allowed by law for redemption of any property sold to any county treasurer for delinquent taxes under the provisions of section 55 of the act to which this act is supplementary, shall have expired, and the treasurer shall have come into possession of a deed to any property of an assessed value of less than one hundred dollars, the board of county commissioners of such county may, by an order entered upon the record of the proceedings of said board, direct the treasurer, or his successor in office, to sell such property, and the proceeds of such sale shall be applied as now provided by law; *provided*, that notice of such sale shall be posted in at least three public places in the county, including one at the court house and one on the property for a period of not less than twenty days prior to the day of sale, and no newspaper publication shall be required in any case where the assessed valuation of the property to be sold is less than one hundred dollars." (Stats. of Nev. 1893, p. 106.)

The above are the only provisions of statutory law that can, in any manner, affect the question to be decided, and as it appears from the record that the assessed value of the property in controversy is more than one hundred dollars, the supplementary act of 1893 above cited cannot be applied to the case. If, however, the contention of appellant's counsel is correct to the effect that the consideration named in the deed is the value to be taken and considered under the provisions of the act of 1893, then must the sale under the facts be held void for the want of the notice required under the provisions of said act.

Under the provisions of section 40, Stats. 1891, above cited, the title to the property in controversy vested in Lyon county before the alleged sale and the execution of the treasurer's deed. The county became the legal owner thereof, at the time the right of redemption expired, for the benefit of the county and state, under the express provision of said section

40.   The only authority to sell such property, where the assessed value thereof is one hundred dollars or more, is found in section 1949, Gen. Stats., above cited, whereby the board of county commissioners is empowered to sell at public auction, after notice, *any property* belonging to the county. Section 55 of the revenue act, above cited, is not in conflict with said section 1949, neither does it confer authority upon any person to sell, except by strained inference.   The evident purpose of said section 55 was to provide a mode, after sale under section 1949 had been made, of conveying the county's title to such lands.

The order required by said section 55 to be entered upon the record of the proceedings of the board is hardly more than an official declaration that such property has been sold by the proper authorities, and the conveyance directed to be made thereunder is a method adopted by the legislature of divesting the county of its title.   It is well settled that boards of county commissioners, being of statutory and limited jurisdiction, cannot act, except where authority is given by express provisions of the statute.   If, therefore, the board of county commissioners is authorized under section 1949 to sell said property, and if the method or manner of such sale is prescribed by such section, then such sale to be valid must, in all respects, strictly comply with the method or manner prescribed.   This court, in discussing the provisions of section 1949, say:   "The powers of commissioners and the mode of exercising them, being derived from the statute, must necessarily depend upon its true construction. The restrictive provisions of the statute were evidently inserted for the protection and benefit of the public, and were intended to guard against favoritism, extravagance or corruption in the letting of contracts for any public work. When the commissioners act under such authority, *they must strictly follow all the conditions under which the authority is given.*   The law is well settled that county commissioners can only exercise such powers as are especially granted, or as may be necessarily incidental for the purpose of carrying such powers into effect; *and when the law prescribes the mode which they must pursue, in the exercise of these powers it*

*excludes all other modes of procedure.*" (*Sadler* v. *The Board of County Commissioners of Eureka Co.*, 15 Nev. 42.)

The above rule was announced by this court in construing that clause of said section 1949 authorizing the board of county commissioners to erect a court house, jail, and other public buildings, and prescribing a method of letting a contract therefor. Counsel for appellant contends that the provisions above cited relating to the sale of property acquired by the county, as was the property in controversy acquired, are merely directory and not mandatory for the reason that no negative language is used therein excluding all other manners of sale. That clause of said section 1949 construed by the supreme court in the case of *Sadler* v. *The Commissioners, supra*, is similar in all respects to the tenth clause of said section 1949 authorizing the commissioners to sell any property belonging to the county and prescribing the mode of such sale. The court, in the case cited, did not base its reason for holding the statute mandatory, as contended for by appellant's counsel, but gave as a reason therefor the protection and benefit of the public and as a guard against favoritism and extravagance and corruption. Applying the same reason to the case at bar, we may well say that the restrictive provisions of the statute, requiring sales of property belonging to the county by the commissioners to be at public auction with previous notice, were inserted for the protection and benefit of the public and were intended to guard against favoritism, fraud and corruption in the sale of public property. To hold otherwise would open the door to gross frauds in the sale of public property—would be a grant of authority to commissioners to privately sell to favorites at a grossly inadequate consideration public property, and would enable the purchaser and beneficiary of such sale, under an order entered upon the record of the proceedings of the board at the closing hour of a session thereof, to hold and enjoy such property.

Counsel for appellant also contends that when the county received from the sale of the property the taxes and costs due, it received every dollar to which it was entitled, as it is the policy of our law that one piece of property shall not be made to bear burdens more onerous than another. That is

true as a matter of taxation, but it is evident that our legislature never intended that this rule should be applied to a sale of property acquired as was the property in controversy. By the express provisions of section 59 of the revenue act of 1891, above cited, the treasurer is required to pay into the general fund of the county any balance arising from the sale of such property and remaining in his hands after the payment of taxes and costs. This provision clearly indicates that it is the policy of our law that in making such sales the property shall be sold for its full value. The provisions of section 1949, requiring the sale to be made at public auction, and with notice, is evidence of the same policy. The last clause in section 58 of the revenue act of 1891 is also evidence of the same policy.

The discussion of counsel for appellant, whereby he seeks to sustain his contention by citing the general rules governing the powers, duties and liabilities of trustees, is not pertinent. In this case the trust is created by statute, and the powers and duties and liabilities thereunder are well defined by statute. Neither is the discussion as to the fairness of the transaction pertinent nor are we required to go to the decisions of other states to ascertain what construction shall be placed upon these statutory provisions, when we have the rule so well defined in the case of *Sadler* v. *The Commissioners, supra.*

We must therefore hold that the sale of property, acquired by the county, under existing tax laws, the assessed value whereof is one hundred dollars or more, can be made only by the board of county commissioners at public auction and after previous notice; that authority for such sale is found under the provisions of the tenth clause of the General Statutes of Nevada, sec. 1949, and the mode prescribed in making such sales excludes all other modes, and must be strictly pursued; that a sale of such property at private sale without previous notice is void.

The judgment will therefore be affirmed.